# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

AMAZENTIS SA and TIMELINE
LONGEVITY, INC.

                Plaintiffs,

vs.

COGNISHIELD GLOBAL LLC and ACTA
PHARMACEUTICALS, INC.

                Defendants.

Civil Action No. _____

**Jury Trial Demanded**

## COMPLAINT

Amazentis SA ("Amazentis") and Timeline Longevity, Inc. ("Timeline Longevity") (together, "Plaintiffs") file this complaint for patent infringement against CogniSHIELD Global LLC ("CogniSHIELD") and Acta Pharmaceuticals, Inc. ("Acta Pharmaceuticals") (together, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs' claims arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including but not limited to 35 U.S.C. §§ 271 and 281-85.

2. Plaintiffs bring this action to: (i) compel Defendants to cease their infringement of Plaintiffs' United States patent rights based on Defendants' unauthorized commercial use, offer for sale, and/or sale of urolithin A containing products in violation of Plaintiffs' patent rights, and/or importation of urolithin A containing products for use in violation of Plaintiffs' patent rights; and (ii) compel Defendants to compensate Plaintiffs for the harm caused by their unlawful actions.

## PARTIES

3.      Amazentis SA is a corporation organized under the laws of Switzerland with its principal place of business at EPFL Innovation Park Batiment C, Ecublens, 1024, Switzerland, and appears in this district for the limited purpose of bringing this litigation.

4.      Timeline Longevity, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business at 824 U.S. Highway 1, Suite 320, North Palm Beach, Florida 33408, and is a wholly owned and operated subsidiary of Amazentis SA.

5.      On information and belief, CogniSHIELD Global LLC is a corporation organized under the laws of the State of Delaware having a principal office located at 292 Newbury Street, Boston, Massachusetts 02115.

6.      On information and belief, Acta Pharmaceuticals, Inc. is a corporation organized under the laws of the State of Delaware having a principal office located at 373 Atlantic Ave, Cohasset, Massachusetts 02025.

7.      Upon information and belief, CogniSHIELD and Acta Pharmaceuticals are closely affiliated entities with a coordinated brand and product relationship, including because: CogniSHIELD and Acta Pharmaceuticals have the same executive, George Alex, serving as Chief Executive Officer of both Defendants; Acta Pharmaceuticals is the applicant/owner for the

"COGNISHIELD" trademark, the "COGNISHIELD SCIENCE-BACKED BRAIN

HEALTH" trademark, and the "COGNISHIELD SCIENCE-BASED BRAIN

HEALTH" trademark; and Dr. Rudolph E. Tanzi is the scientific co-founder and

director of Acta Pharmaceuticals and a collaborator and shareholder in

CogniSHIELD.

## JURISDICTION AND VENUE

8.     This is an action for patent infringement arising under the patent laws

of the United States, 35 U.S.C. §1 et seq., including but not limited to 35 U.S.C.

§§271 and 281-85.

9.     This Court has subject matter jurisdiction over this action under 28

U.S.C. §§1331 and 1338(a).

10.     This Court has personal jurisdiction over the Defendants because, on

information and belief, the Defendants have a regular and established business in

this district, regularly conduct, transact and/or solicit business in this district,

and/or derive substantial revenue from business transactions in this district, and/or

are causing tortious injury in this district, and/or otherwise avail themselves of the

privilege and protections of the laws of this district, *i.e.,* in the Commonwealth of

Massachusetts.

11.     The Court also has personal jurisdiction over the Defendants because,

on information and belief, the Defendants have committed unlawful acts giving

rise to this action within this district, including by selling urolithin A-containing

products for infringing purposes in this district such that the Defendants reasonably

should have anticipated being subject to suit in this district.

12.    Venue is proper in this District under 28 U.S.C. 1400(b) because the

Defendants reside in this district, have a regular and established business in this

district, and, on information and belief, have committed acts of infringement in this

district and each have a regular and established place of business in this district.

## BACKGROUND
### Plaintiffs and Urolithin A

13.    Founded in 2007 by researchers located at the Swiss Federal Institute

of Technology, Amazentis is an innovative Swiss life sciences company that

employs rigorous science to pioneer the discovery and clinical development of

innovative nutritional and cosmetic products. Amazentis is a leader in urolithin

research and development; its scientists have published numerous papers on

urolithin A, and it has conducted multiple clinical trials studying the uses and

benefits of urolithin A.

14.    As background, the cells of humans and other animals undergo a

process called autophagy in which cells eliminate and then regenerate their own

internal components that have become defective or damaged. For example, cells

will recycle dysfunctional mitochondria—the internal cellular component that

aerobically generates energy for the cell—through an autophagy process called

mitophagy. Research performed by Amazentis and others shows that urolithin A, a compound that can be produced by certain microflora in the mammalian intestine following the consumption of dietary precursors, e.g., compounds called ellagitannins, plays an important role in stimulating this process.

15.     However, research has also shown that the effectiveness with which mammalian intestinal microflora metabolize certain foods (e.g., pomegranates, raspberries, strawberries, black raspberries, walnuts, and almonds) to produce urolithin A varies significantly from person to person, with most people producing limited urolithin A or none at all. In addition, research has further shown that autophagy and mitophagy become less efficient with age, leading to declines in health associated with aging, including declines in muscle mass, energy levels, immune function, cardiovascular function, cognitive health, and other physiological deficits.

16.     Through its own extensive research and development, Amazentis has developed processes to chemically synthesize urolithin A (*i.e.*, outside of the microflora of the mammalian intestines) in sufficient quantities to be used as a dietary supplement. Further, through rigorous animal and human clinical studies, the results of which have been published in peer-reviewed and other publications, Amazentis has demonstrated the benefits of direct supplementation with urolithin A.

17.     Amazentis has demonstrated through clinical trials that direct supplementation with effective amounts of urolithin A in excess of the amounts normally produced by mammalian intestinal microflora stimulates an intracellular process called mitophagy. Mitophagy is the selective removal and renewal of damaged mitochondria through a cell's pathway for autophagy.

18.     Amazentis has also demonstrated through clinical studies that the mitophagy induced by urolithin A supplementation confers numerous benefits that support healthy aging, including increased muscle function and increased immune function, as some examples.

19.     Examples of these animal and human clinical studies include an animal study published on July 11, 2016, in the peer-reviewed scientific journal Nature Medicine (http://doi.org/10.1038/nm.4132) entitled "The lifespan and muscle benefits of urolithin A induces mitophagy and prolongs lifespan in C. elegans and increased muscle function in rodents"; a human clinical study published on June 14, 2019, in the peer-reviewed scientific journal Nature Metabolism (http://doi.org/10.1038/s/42255-019-0073-4) entitled "The mitophagy activator Urolithin A is safe and induces a molecular signature of improved mitochondrial and cellular health in humans"; a human clinical study published on January 20, 2022, in the peer-reviewed scientific journal JAMA Network (http://doi.org/10.1001/jamanetworkopen.2021.44279) entitled "Effect of urolithin

A supplementation on muscle endurance and mitochondrial health in older adults, a randomized clinical trial"; and a human clinical study published on May 17, 2022, in the peer-reviewed scientific journal Cell Reports Medicine (http://doi.org/10.1016/j.xcrm.2022.100633) entitled "Urolithin A improves muscle strength, exercise performance, and biomarkers of mitochondrial health in a randomized trial in middle-aged adults." These and the results of other animal and human clinical studies conducted by Amazentis are clearly identified on Plaintiffs' TIMELINE® website: www.timeline.com/studies.

20.    Ultimately, having made significant investments to develop manufacturing methods for urolithin A at scale and to demonstrate the effectiveness of urolithin A as a healthy aging supplement product, Plaintiffs are now bringing to consumers in the United States and around the world an array of products featuring urolithin A branded as MITOPURE®. Plaintiffs are further commercializing TIMELINE®, a consumer brand containing their proprietary MITOPURE® brand of urolithin A.

21.    To protect their extensive investments in researching, developing and commercializing urolithin A-containing products, Plaintiffs have invested in securing patent protection for their urolithin A products and production. Plaintiffs now own dozens of patents and published patent applications in various jurisdictions throughout the world related to urolithin compounds, including

patents directed to processes to synthesize and scale up the production of urolithin compounds, and supplementing one's diet with effective amounts of urolithin compounds to improve biological functions in healthy people as well as to treat certain diseases. The existence of these patents, as well as numerous published patent applications owned by Plaintiffs, is clearly posted on Plaintiffs' TIMELINE® website: www.timeline.com/patents, an address on the Internet accessible to the public without charge.

## THE PATENTS-IN-SUIT

22.     Amazentis is the owner of all right, title, and interest in U.S. Patent Nos. 10,485,782 ("the '782 Patent"), 10,857,126 ("the '126 Patent"), and 11,234,960 ("the '960 Patent") (collectively, "the Patents-in-Suit"), with full right to bring suit to enforce the Patents-in-Suit, including the right to sue for past, present and future infringement. True and correct copies of each of the Patents-in-Suit are attached to this Complaint as Exhibits A to C.

23.     The '782 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on November 26, 2019, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and

David Genoux as inventors, each of whom assigned their invention as disclosed in the '782 Patent to Amazentis.

24.     The '782 Patent is valid and enforceable.

25.     The '782 Patent claims, inter alia, "[a] method of increasing or maintaining mitochondrial function, comprising: administering to a subject in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function."

26.     The '126 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on December 8, 2020, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Genoux as inventors, each of whom assigned their invention as disclosed in the '126 Patent to Amazentis.

27.     The '126 Patent is valid and enforceable.

28.     The '126 Patent claims, inter alia, "[a] method of improving cognitive function, comprising: administering to a subject in need thereof an effective amount of a urolithin thereby improving the cognitive function."

29.     The '960 Patent, entitled "Compositions and Methods for Improving Mitochondrial Function and Treating Neurodegenerative Diseases and Cognitive Disorders," was duly and legally issued by the United States Patent and Trademark Office on February 1, 2022, and names Christopher Rinsch, William Blanco-Bose, Bernard Schneider, Charles Thomas, Carmen Sandi, Johan Auwerx, Penelope Andreux, Richardus Houtkooper, Eija Pirinen, Laurent Mouchiroud, and David Genoux as inventors, each of whom assigned their invention as disclosed in the '960 Patent to Amazentis.

30.     The '960 Patent is valid and enforceable.

31.     The '960 Patent claims, inter alia, "[a] method of treating a neurodegenerative disease, comprising: administering to a subject in need thereof a therapeutically effective amount of urolithin A, thereby treating the neurodegenerative disease; wherein the effective amount of urolithin A is about 140 mg to about 8,400 mg; and the neurodegenerative disease is selected from the group consisting of AIDS dementia complex, Alzheimer's disease, dementia with Lewy bodies, Huntington's disease, and Parkinson's disease."

32.     Plaintiffs sell products that practice at least one claim of each of the Patents-in-Suit.

## <u>DEFENDANTS INFRINGE THE PATENTS-IN-SUIT</u>

33.     Defendants offer for sale and sell at least the CogniSHIELD product containing urolithin A through the website http://cognishield.com.

34.     On information and belief, both Defendants are responsible for the CogniSHIELD website, http://cognishield.com. True and correct copies of pages from the CogniSHIELD website are attached as Exhibit D with screenshots from the website reproduced below.



35.     As the label for the CogniSHIELD product shows (*see* Exhibit D), the

CogniSHIELD product dose (2 capsules) contains 200 mg of urolithin A per

serving and is sold as a dietary supplement for humans.



In formulation, the urolithin A in Defendants' CogniSHIELD increases or

maintains mitochondrial function, improves cognitive function, and treats

neurodegenerative disease.

36.     Defendants rely upon Plaintiffs' research to promote the urolithin A in

Defendants' CogniSHIELD product as benefiting brain function including

increasing or maintaining mitochondrial function, improving cognitive function,

and treating neurodegenerative disease.

37.     Defendants promote the urolithin A in Defendants' CogniSHIELD

product as benefiting brain function including increasing or maintaining

mitochondrial function, improving cognitive function, and treating

neurodegenerative disease.

38.    Defendants also offer for sale and sell the CogniSHIELD product on Amazon.com (www.amazon.com/CogniSHIELD-Brain-Health-Supplement-Age-Related/dp/B0F228XTC7; http://www.amazon.com/stores/CogniSHIELD/page/E58F7CE2-05C6-4B35-82A7-2C2AC8A16BBC). True and correct copies of Defendants' Amazon.com webpages for the CogniSHIELD product are attached to this Complaint as Exhibit E.

39.    As illustrated by the images below that are present on the CogniSHIELD product webpages on Amazon.com, the Defendants advertise the benefits of the CogniSHIELD product to include "Protection against normal age-related decline," "Maximized neural function," "Promote brain health and mental vitality," and "Support memory and recall."



40.    Defendants also promote the CogniSHIELD product through a variety of social media platforms and channels, as well as through various industry publications, including at least LinkedIn and Alzheimer's and Dementia Weekly.

A true and correct copy of posts on LinkedIn.com and Alzheimer's and Dementia Weekly promoting the CogniSHIELD product and reporting on its development are attached to this Complaint as Exhibits F and G. This includes the promotion of the CogniSHIELD product as "[a] compound that promotes mitochondrial health and may help clear damaged cells" and that "[t]he development of CogniSHIELD was informed by peer-reviewed studies on neuroinflammation, mitochondrial health, and senolytics." *See* Exhibit G.

<u>The '782 Patent</u>

41.     Independent claim 1 of the '782 Patent recites: "A method of increasing or maintaining mitochondrial function, comprising: administering to a subject in need thereof an effective amount of a urolithin, thereby increasing or maintaining mitochondrial function."

42.     On information and belief, Defendants' statements in the attached exhibits, as referenced above, are meant to convey that taking the CogniSHIELD product increases or maintains mitochondrial function.

43.     On information and belief, customers of the CogniSHIELD product infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '782 Patent as well as one or more of the following additional claims that depend on claim 1: claim 3 ("wherein the urolithin is urolithin A"), claim 5 ("wherein the urolithin is administered orally"), claim 7 ("wherein the subject is a

human"), claim 21 ("wherein mitochondrial function is maintained"), claim 22 ("wherein mitochondrial function is increased"), claim 23 ("wherein mitochondrial activity is increased"), claim 25 ("wherein the energy of the subject is increased"), claim 26 ("wherein mitochondrial biogenesis is increased"), claim 28 ("wherein ATP levels are increased in tissue"), and claim 29, which also depends on claim 28 ("wherein the tissue is a muscle tissue").

44.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A in a product, while having knowledge of or being willfully blind to the existence of the '782 Patent, Defendants actively induce the infringement of at least claims 1, 3, 5, 7, 21-23, 25-26, and 28-29 of the '782 Patent.

45.    On information and belief, Defendants' labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "effective amount[s]" of urolithin A in a product, while having knowledge of or being willfully blind to the existence of the '782 Patent, actively induce the infringement of at least claims 1, 3, 5, 7, 21-23, 25-26, and 28-29 of the '782 Patent.

46.    On information and belief, by offering for sale and selling "effective amount[s]" of urolithin A in a product, while knowing that it is especially adapted for use in infringement of the '782 Patent, and not a staple article or commodity of

commerce suitable for substantial noninfringing uses, particularly in view of Plaintiffs' other duly granted patent rights and in view of Plaintiffs' published clinical studies showing that urolithin A supplementation induces mitophagy, Defendants have contributed to the infringement of at least claims 1, 3, 5, 7, 21-23, 25-26, and 28-29 of the '782 Patent.

The '126 Patent

47.    Independent claim 1 of the '126 Patent recites: "A method of improving a cognitive function, comprising: administering to a subject in need thereof an effective amount of a urolithin thereby improving the cognitive function."

48.    On information and belief, Defendants' statements in the attached exhibits, as referenced above, are meant to convey that taking the CogniSHIELD product improves cognitive function.

49.    On information and belief, customers of the CogniSHIELD product infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '126 Patent as well as at least the following additional claims that depend on claim 1: claim 2 ("wherein the cognitive function is selected from the group consisting of perception, memory, attention, speech comprehension, speech generation, reading comprehension, creation of imagery, learning, and reasoning"), claim 3 ("wherein cognitive function is selected from the group consisting of

perception, memory, attention, and reasoning"), claim 4 ("wherein cognitive

function is memory"), claim 5 ("wherein the urolithin is urolithin A"), claim 6

("wherein the urolithin is selected from the group consisting of urolithin A,

urolithin B, and a combination of urolithin A and urolithin B"), claim 7 ("wherein

the urolithin is administered orally"), claim 9 ("wherein the urolithin is

administered at least daily"), claim 10 ("wherein the subject is a human"), claim 17

("wherein the urolithin is administered in the form of a dietary supplement"), and

claim 18 ("wherein the urolithin is administered in the form of a nutritional

supplement").

50.     On information and belief, by offering for sale and selling "effective

amount[s]" of urolithin A in a product, while having knowledge of or being

willfully blind to the existence of the '126 Patent, Defendants actively induce the

infringement of at least claims 1-7, 9-10, and 17-18 of the '126 Patent.

51.     On information and belief, Defendants' labeling, marketing,

promotional, and sales materials and actions in offering for sale and selling

"effective amount[s]" of urolithin A in a product, while having knowledge of or

being willfully blind to the existence of the '126 Patent, actively induce the

infringement of at least claims 1-7, 9-10, and 17-18 of the '126 Patent.

52.     On information and belief, by offering for sale and selling "effective

amount[s]" of urolithin A in a product, while knowing that it is especially adapted

for use in infringement of the '126 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Plaintiffs' other duly granted patent rights, Defendants have contributed to the infringement of at least claims 1-7, 9-10, and 17-18 of the '126 Patent.

### The '960 Patent

53.     Independent claim 1 of the '960 Patent recites: "A method of treating a neurodegenerative disease, comprising: administering to a subject in need thereof a therapeutically effective amount of urolithin A, thereby treating the neurodegenerative disease; wherein the effective amount of urolithin A is about 140 mg to about 8,400 mg; and the neurodegenerative disease is selected from the group consisting of AIDS dementia complex, Alzheimer's disease, dementia with Lewy bodies, Huntington's disease, and Parkinson's disease."

54.     On information and belief, Defendants' statements in the attached exhibits, as referenced above, are meant to convey that taking the CogniSHIELD product treats a neurodegenerative disease.

55.     On information and belief, customers of the CogniSHIELD product infringe, literally or under the doctrine of equivalents, at least independent claim 1 of the '960 Patent as well as at least the following additional claims that depend on claim 1: claim 2 ("wherein the urolithin A is administered orally"), claim 10

("wherein the subject is a human"), and claim 19 ("wherein urolithin A is administered in the form of a dietary supplement").

56.    On information and belief, by offering for sale and selling "therapeutically effective amount[s]" of urolithin A in a product, while having knowledge of or being willfully blind to the existence of the '960 Patent, Defendants actively induce the infringement of at least claims 1-2, 10 and 19 of the '960 Patent.

57.    On information and belief, Defendants' labeling, marketing, promotional, and sales materials and actions in offering for sale and selling "therapeutically effective amount[s]" of urolithin A in a product, while having knowledge of or being willfully blind to the existence of the '960 Patent, actively induce the infringement of at least claims 1-2, 10 and 19 of the '960 Patent.

58.    On information and belief, by offering for sale and selling "therapeutically effective amount[s]" of urolithin A in a product, while knowing that it is especially adapted for use in infringement of the '960 Patent, and not a staple article or commodity of commerce suitable for substantial noninfringing uses, particularly in view of Plaintiffs' other duly granted patent rights, Defendants have contributed to the infringement of at least claims 1-2, 10 and 19 of the '960 Patent.

## DEFENDANTS' KNOWLEDGE AND WILLFUL INFRINGEMENT OF THE PATENTS-IN-SUIT

59.    Plaintiffs have caused the patent numbers of each of the Patents-in-Suit to appear on articles practicing the Patents-in-Suit and/or by directing the public to an Internet location (accessible to the public without charge) that associates the patented articles with the number(s) of the patent(s) in compliance with 35 U.S.C. §287.

60.    Since prior to the launch of their CogniSHIELD product Defendants have known of the existence of each of the Patents-in-Suit.

61.    Since prior to the launch of their CogniSHIELD product Defendants have known the inventions claimed in each of the Patents-in-Suit.

62.    Since prior to the launch of their CogniSHIELD product Defendants have known the relevance of each of the Patents-in-Suit to the CogniSHIELD product.

63.    Since prior to the launch of their CogniSHIELD product Defendants have known that CogniSHIELD product infringes each of the Patents-in-Suit.

64.    Since prior to the launch of their CogniSHIELD product Defendants have known that their actions induce the infringement of and contribute to the infringement of each of the Patents-in-Suit.

65.    For instance, in 2022 Defendants discussed the Patents-in-Suit with Plaintiffs' representatives.  At the time, Defendants had not launched the

CogniSHIELD product, but their discussions demonstrate that they understood the CogniSHIELD product would practice the Patents-in-Suit.

66.     Additionally, on August 12, 2025, Plaintiffs sent an email to Dr. Rudolph E. Tanzi, the scientific co-founder and director of Acta Pharmaceuticals and a collaborator and shareholder in CogniSHIELD, stating that the CogniSHIELD product infringes on Plaintiffs' U.S. patents and indicated that they would like to resolve the matter amicably. On the same day, August 12, 2025, Dr. Tanzi responded copying Defendants' CEO, George Alex, to address Plaintiffs' correspondence.

67.     On information and belief, Dr. Tanzi was acting on behalf of both Defendants at all times relevant for purposes of at least any communications with Plaintiffs concerning Plaintiffs' urolithin A business, including Plaintiffs' products, ingredients and patents. On information and belief, Mr. Alex was Chief Executive Officer of both Acta Pharmaceuticals and CogniSHIELD on August 12, 2025, and was also acting on behalf of both Defendants at all times relevant for purposes of at least any communications with Plaintiffs on and after August 12, 2025, concerning Plaintiffs' urolithin A business, including Plaintiffs' products, ingredients and patents.

68.     On August 17, 2025, Plaintiffs sent a letter by FedEx and email to Defendants identifying the CogniSHIELD product as infringing each of the

Patents-in-Suit. Plaintiffs further explained with examples how Defendants were infringing the Patents-in-Suit under 35 U.S.C. §§ 271(b) and (c).

69.     In their August 17, 2025, letter, Plaintiffs also directed Defendants to their website that was freely accessible on the Internet that identified other U.S. patents assigned to Amazentis.  This letter too shows established that Defendants were aware of each of the Patents-in-Suit and the infringement of those patents as of their receipt of the August 17, 2025, letter, although they should have been aware they were infringing those patents earlier.

70.     Defendants have also known that their offers for sale and sale of the CogniSHIELD product have infringed and will infringe at least one or more claims of the '782, '126, and '960 Patents, directly or indirectly, since prior to their launch of the CogniSHIELD product.  Since prior to their launch of the CogniSHIELD product,, Defendants have acted, and will continue to act, with a specific intent to induce others to infringe the '782, '126, and '960 Patents.

71.     Indeed, on information and belief, as of 2022 and again as of August 2025 both Defendants were aware that they needed a license to offer to sell and sell the CogniSHIELD product in the United States but have been unable to obtain such a license from Plaintiffs.

72.     In addition, the filing of this Complaint provides further notice to Defendants of the Patents-in-Suit under 35 U.S.C. § 287.

## CLAIMS FOR RELIEF

### Count I
### (Infringement of U.S. Patent 10,485,782)

73.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

74.     Customers of the CogniSHIELD product have been, and are still infringing, literally and/or under the doctrine of equivalents, one or more claims of the '782 Patent, including at least claims 1, 3, 5, 7, 21-23, 25-26, and 28-29, by using the CogniSHIELD product in the United States, without authority.

75.     Defendants have, through their actions (including but not limited to the sale and promotion of the CogniSHIELD product and/or through the instructions on the label of the CogniSHIELD product), induced others, including their customers, to infringe one or more claims of the '782 Patent, including at least claims 1, 3, 5, 7, 21-23, 25-26, and 28-29.

76.     Defendants have, through their actions (including but not limited to the sale and promotion of the CogniSHIELD product and/or through the instructions on the label of the CogniSHIELD product), contributed to the infringement of one or more claims of the '782 Patent, including at least claims 1, 3, 5, 7, 21-23, 25-26, and 28-29.

77.     Defendants do not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

78.     Defendants' infringement of the '782 Patent has been and continues to be willful.

79.     Plaintiffs have and will continue to suffer damages because of Defendants' infringement of the '782 Patent.

80.     Plaintiffs have and will continue to be irreparably harmed by Defendants' infringement of the '782 Patent until and unless Defendants' infringing acts are enjoined or otherwise cease.

## Count II
### (Infringement of U.S. Patent 10,857,126)

81.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

82.     Customers of the CogniSHIELD product have been, and are still infringing, literally and/or under the doctrine of equivalents, one or more claims of the '126 Patent, including at least claims 1-7, 9-10, and 17-18, by using the CogniSHIELD product in the United States, without authority.

83.     Defendants have, through their actions (including but not limited to the sale and promotion of the CogniSHIELD product and/or through the instructions on the label of the CogniSHIELD product), induced others, including their customers, to infringe one or more claims of the '126 Patent, including at least claims 1-7, 9-10, and 17-18.

84.     Defendants have, through their actions (including but not limited to the sale and promotion of the CogniSHIELD product and/or through the instructions on the label of the CogniSHIELD product), contributed to the infringement of one or more claims of the '126 Patent, including at least claims 1-7, 9-10, and 17-18.

85.     Defendants do not provide, promote, advertise, or otherwise distribute urolithin A for any substantial non-infringing uses.

86.     Defendants' infringement of the '126 Patent has been and continues to be willful.

87.     Plaintiffs have and will continue to suffer damages because of Defendants' infringement of the '126 Patent.

88.     Plaintiffs have and will continue to be irreparably harmed by Defendants' infringement of the '126 Patent until and unless Defendants' infringing acts are enjoined or otherwise cease.

## Count III
## (Infringement of U.S. Patent 11,234,960)

89.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

90.     Customers of the CogniSHIELD product have been, and are still infringing, literally and/or under the doctrine of equivalents, one or more claims of

the '960 Patent, including at least claims 1-2, 10 and 19, by using the

CogniSHIELD product in the United States, without authority.

91.     Defendants have, through their actions (including but not limited to

the sale and promotion of the CogniSHIELD product and/or through the

instructions on the label of the CogniSHIELD product), induced others, including

their customers, to infringe one or more claims of the '960 Patent, including at

least claims 1-2, 10 and 19.

92.     Defendants have, through their actions (including but not limited to

the sale and promotion of the CogniSHIELD product and/or through the

instructions on the label of the CogniSHIELD product), contributed to the

infringement of one or more claims of the '960 Patent, including at least claims 1-

2, 10 and 19.

93.     Defendants do not provide, promote, advertise, or otherwise distribute

urolithin A for any substantial non-infringing uses.

94.     Defendants' infringement of the '960 Patent has been and continues to

be willful.

95.     Plaintiffs have and will continue to suffer damages because of

Defendants' infringement of the '960 Patent.

96.     Plaintiffs have and will continue to be irreparably harmed by Defendants' infringement of the '960 Patent until and unless Defendants' infringing acts are enjoined or otherwise cease.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     A judgment that Defendants have infringed the '782, '126, and '960 Patents;

B.     An order preliminarily and/or permanently enjoining Defendants, together with their directors, officers, agents, servants, employees, attorneys, parents, subsidiaries, divisions, affiliates, other related business entities, and all persons in active concert or privity with them and their successors and assigns, from infringing the '782, '126, and '960 Patents;

C.     A judgment that awards Plaintiffs damages adequate to compensate for Defendants' infringing acts in accordance with 35 U.S.C. § 284;

D.     In the event that a permanent injunction is not granted, damages for any continuing future infringement of the '782, '126, and '960 Patents;

E.     A judgment declaring that Defendants' conduct has been in bad faith and exceptional, and that its infringement has been willful and awarding enhanced damages under 35 U.S.C. § 284;

F.      Finding that this case is exceptional under 35 U.S.C. § 285, and awarding Plaintiffs their reasonable attorneys' fees incurred in connection with this action;

G.      Awarding Plaintiffs their costs and expenses in this action, including expert and witness fees;

H.      An award of prejudgment and post-judgment interest;

I.      Awarding Plaintiffs' such other and further relief as this Court deems just and appropriate.

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury on all issues so triable.

Dated: February 27, 2026

*Of Counsel*

Dana M. Gordon
  Mass Bar No. 652757
  dgordon@foleyhoag.com
**FOLEY HOAG LLP**
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000

By: */s/ Rachel Kerner*
Rachel Kerner
  Mass Bar No. 703341
  rkerner@foleyhoag.com
Nathanial J. McPherson
  Mass Bar No. 697666
  nmcpherson@foleyhoag.com
**FOLEY HOAG LLP**
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2600
Phone: 617.832.1000
Fax: 617.832.7000

Jeffrey I. D. Lewis
  pro hac vice application forthcoming
  jidlewis@foleyhoag.com
**FOLEY HOAG LLP**
1301 Avenue of the Americas, 25th Floor
New York, NY 10019
Phone: 212.812.0400
Fax: 212.812.0399

*Attorneys for Plaintiffs*
*AMAZENTIS SA and TIMELINE*
*LONGEVITY, INC.*